UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

NATIONAL FAIR HOUSING ALLIANCE,

    Plaintiff,

v.                                                                                         No. 20-cv-457 MV/GJF

BROOKDALE SANTA FE;
BROOKDALE TRAMWAY RIDGE;
BLC-PONCE DE LEON, LLC;
BROOKDALE PROVIDENT PROPERTIES, LLC;
BROOKDALE PLACE OF ALBUQUERQUE, LLC;
BKD FM21 HOLDINGS I, LLC;
BROOKDALE LIVING COMMUNITIES, INC.;
BROOKDALE SENIOR LIVING COMMUNITIES, INC.;
FEBC-ALT HOLDINGS, INC.;
FEBC-ALT INVESTORS, LLC;
BROOKDALE SENIOR LIVING INC.,

    Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Motion to Dismiss Plaintiff's First Amended Complaint ("Motion to Dismiss") [Doc. 33]. The Court, having considered the motion and relevant law, finds that the Motion is well-taken and will be granted.

## BACKGROUND

Plaintiff National Fair Housing Alliance ("NFHA") is a non-profit organization whose mission is to eliminate housing discrimination and ensure equal housing opportunities through the United States. Doc. 27 ¶ 1. In furtherance of that mission, in October 2018, Plaintiff investigated nursing home facilities in New Mexico, including Brookdale Santa Fe and Brookdale Tramway Ridge, to determine whether these facilities provide ASL interpreters to deaf residents. *Id.* ¶¶ 3-4, 33-36. Specifically, Plaintiff's "testers" posed as family members of deaf individuals and inquired as to whether the facility would provide interpreting services for

1

medical visits and certain social activities; representatives of each facility advised that the cost of ASL interpreters would not be covered by the facility but rather would be borne by the prospective resident.  *Id.* ¶¶ 34; 36.

As a result, Plaintiff commenced the instant action by filing its Complaint on May 13, 2020, asserting violations of the Fair Housing Act, Section 504 of the Rehabilitation Act, and violations of Section 1557 of the Patient Protection and Affordable Care Act.  Doc. 1.  The Complaint named the following related corporate entities as Defendants: Brookdale Santa Fe; Brookdale Tramway Ridge; Brookdale Senior Living Communities, Inc.; and Brookdale Senior Living, Inc.  *Id*.  Two of the named Defendants, Brookdale Senior Living Communities and Brookdale Senior Living, filed a motion to dismiss for lack of personal jurisdiction and failure to state a claim.  Doc. 21.  Thereafter, Plaintiff filed its First Amended Complaint, Doc. 27, asserting the same violations against the original four Defendants in addition to the following additional related corporate entities:  BLC-Ponce De Leon, LLC; Brookdale Provident Properties, LLC; Brookdale Place of Albuquerque, LLC; BKD FM21 Holdings I, LLC; Brookdale Living Communities, LLC; FEBC-ALT Holdings, Inc.; and FEBC-ALT Investors, LLC.  Doc. 27.  The First Amended Complaint broadly alleges that each of these entities is "doing business within this judicial District," and that all of them are "alter-egos of each other" or otherwise "acted as agents of each other and are single, joint, and/or common enterprises," rendering them indistinguishable from each other and "directly and vicariously liable" for each other's actions.  *Id.* ¶¶ 14-23.

On December 14, 2020, Defendants filed the instant Motion to Dismiss.  Doc. 33.  Plaintiff filed a response in opposition on December 28, 2020, Doc. 35, and Defendants' reply followed on February 11, 2021.  Doc. 37.

**DISCUSSION**

On their instant Motion, Defendants argue that the only entities properly named as Defendants to this action are BLC-Ponce De Leon and Brookdale Place of Albuquerque (collectively, the "Facilities"). As an initial matter, Defendants argue that Brookdale Santa Fe and Brookdale Tramway Ridge are merely "operational names of two senior living facilities in New Mexico." Doc. 33 at 3. In support of this contention, Defendants point to the Declaration of Joanne K. Leskowicz ("Leskowicz Declaration"), an officer of Brookdale Senior Living and Brookdale Senior Living Communities, which Defendants submit in support of their Motion. Doc. 33-1. According to the Leskowicz Declaration, Brookdale Santa Fe is a "dba" or "doing business as" name under which BLC-Ponce de Leon operates, and Brookdale Tramway Ridge is a "dba" or "doing business as" name under which Brookdale Place of Albuquerque operates. *Id.* at ¶¶ 5-6. Ms. Leskowicz states that neither Brookdale Santa Fe nor Brookdale Tramway Ridge is "a separate legal entity" capable of being sued. *Id.* Plaintiff nowhere refutes this evidence or provides any basis for the Court to conclude to the contrary. Indeed, in its Response, Plaintiff makes no mention of Brookdale Santa Fe or Brookdale Tramway Ridge. Accordingly, the Court finds that neither Brookdale Santa Fe nor Brookdale Tramway Ridge is a proper Defendant in this action, and that both should be dismissed.

As to Defendants Brookdale Provident Properties, BKD FM21 Holdings I, Brookdale Living Communities, Brookdale Senior Living Communities, FEBC-ALT Holdings, FEBC-ALT Investors, and Brookdale Senior Living (collectively, the "Disputed Entities"), Defendants argue that the First Amended Complaint should be dismissed pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure for lack of personal jurisdiction, or in the alternative, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim. Doc. 33. As

explained herein, the Court agrees with Defendants that jurisdiction is lacking as to these entities, and that dismissal pursuant to Rule 12(b)(2) as to these entities thus is warranted. Because the Court lacks personal jurisdiction over these entities, it need not (and indeed, may not) reach a decision on the merits as to the alternative grounds for dismissal raised by Defendants.

I. <u>Standard</u>

"[W]hen the court's jurisdiction is contested, the plaintiff has the burden of proving jurisdiction exists." *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995). Where, as here, "there has been no evidentiary hearing, and the motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written material, the plaintiff need only make a prima facie showing that jurisdiction exists." *Id.* "The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendants' affidavits." *Id.* Further, "[i]f the parties present conflicting affidavits, all factual disputes must be resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party." *Id.* Importantly, however, "only the well pled facts of plaintiff's complaint, as distinguished form mere conclusory allegations, must be accepted as true." *Id.* And "[t]he plaintiff has the duty to support jurisdictional allegations in a complaint by competent proof of the supporting facts if the jurisdictional allegations are challenged by an appropriate pleading." *Id.* at 1508. Ultimately, the court's "task is to determine whether the plaintiff's allegations, as supported by affidavits, make a prima facie showing of personal jurisdiction." *Id.* at 1505.

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014). Here, New Mexico's long-arm statute "extends the jurisdictional reach of New Mexico courts as far as constitutionally permissible." *Tercero v. Roman Catholic Diocese*, 48 P.3d 50, 54 (N.M. 2002). Thus, in order

to determine whether this court may exercise personal jurisdiction over Defendants, the relevant inquiry is whether that exercise of jurisdiction "comports with the limits imposed by federal due process." *Daimler*, 571 U.S. at 125.

"The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful contacts, ties or relations." *Burger King Corp. v. Rudzewicz*, I471 U.S. 462, 471-72 (1985). In the "canonical opinion" of *International Shoe Co. v. Washington*, 326 U.S. 310 (1945), the Supreme Court held that a court may "exercise personal jurisdiction over an out-of-state defendant if the defendant has certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Daimler*, 571 U.S. at 126 (quoting *International Shoe*, 326 U.S. at 316).

Two categories of personal jurisdiction have developed from *International Shoe*'s conception of "fair play and substantial justice"'": general jurisdiction and specific jurisdiction. *Daimler*, 571 U.S. at 126; *Bristol-Myers Squibb Co. v. Superior Court of Cal.*, 137 S. Ct. 1773, 1780 (2017). "A court with general jurisdiction may hear *any* claim against that defendant, even if all the incidents underlying the claim occurred in a different State." *Bristol-Meyers*, 137 S. Ct. at 1780 (emphasis in original). Notably, however, "only a limited set of affiliations with a forum will render a defendant amenable to general jurisdiction in that State." *Id.* (citations omitted). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Id.* (citations omitted). Further, with regard to foreign corporations, a court may assert general jurisdiction "when their affiliations with the State are so continuous and

systematic as to render them essentially at home in the forum State." *Daimler*, 571 U.S. at 127 (citations omitted).

In contrast, "[i]n order for a court to exercise specific jurisdiction, the *suit* must arise out of or relate to the defendant's contacts with the forum." *Bristol-Myers*, 137 S. Ct. at 1780 (citations omitted; emphasis in original). "[T]here must be an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum state and is therefore subject to the State's regulation." *Id.* (citation omitted). Specific jurisdiction thus "is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Id.* (citation omitted). "The minimum contacts standard allows a federal court to exercise specific personal jurisdiction over a foreign defendant only if the defendant purposely directed her activities at the forum and the plaintiff's injuries arose from the defendant's forum-related activities." *CGC Holding Co., LLC v. Hutchens*, 974 F.3d 1201, 1209 (10th Cir. 2020).

II. <u>The Instant Case</u>

Plaintiff does not clarify whether it seeks to subject the Disputed Entities to the Court's general jurisdiction or its specific jurisdiction; rather, Plaintiff broadly alleges that the Disputed Entities are "doing business within this judicial District" and "have sufficient contacts with this District to subject them to personal jurisdiction." Doc. 27 ¶¶ 15, 17-22, 25. Rather than alleging facts that, if proven, would establish that the Disputed Entities indeed are "doing business" in New Mexico, Plaintiff (again broadly) alleges that they are "alter-egos" of the Undisputed Entities, or in the alternative, that "all of them acted as agents of each other and are single, joint, and/or common enterprises" and as such, their "actions or conducts cannot be distinguished from each other and they are all directly and/or vicariously liable for their actions." *Id.* ¶ 23.

Accordingly, Plaintiff appears to be alleging that, by virtue of their relationship with the Facilities, which admittedly are conducting business in New Mexico, the Disputed Entities, too, must be deemed to be conducting business in New Mexico. In other words, Plaintiff's theory is that, because the Court (undisputedly) has jurisdiction over the Facilities, and because the Disputed Entities are alter egos and/or in an agency relationship with the Facilities, the Court equally has jurisdiction over the Disputed Entities.

Defendants dispute this theory and provide the Leskowicz Declaration to controvert Plaintiff's alter ego/agency allegations. Doc. 33, Doc. 33-1. In its Response, Plaintiff reiterates its alter ego/agency theory, relying almost entirely on a decision issued in a separation litigation that involved some of the same entities as those named as Defendants here: *Johnson v. BLC Lexington, SNF, LLC*, No. 19-cv-064, 2019 WL 6053012 (E.D. Ky. Nov. 15, 2019). Plaintiff also submits as evidentiary support the transcript of a deposition of Ms. Leskowicz ("Leskowicz Deposition"), which was taken in the *Johnson* litigation. For the following reasons, the Court finds that Plaintiff's allegations, as supported by the Leskowicz Deposition, fail to make a prima facie showing of personal jurisdiction over the Disputed Entities.

*Alter Ego/Agency Theory of Jurisdiction*

Applying (as it must) New Mexico law, "due process guided by elements of an alter ego analysis frame[s] [the Court's] inquiry into [its] personal jurisdiction over [the Disputed Entities]." *Alto Eldorado Partnership v. Amrep*, 124 P.3d 585, 595 (N.M. Ct. App.); *see also id.* at 594 (explaining that, although it would not "directly superimpose ill-fitting and questionably relevant principles of substantive corporate liability law onto our constitutional jurisdictional inquiry, the relationship between a parent and its subsidiary may be crucial in evaluating jurisdiction itself"). For purposes of the alter ego/agency analysis, the general rule is that "the

mere relationship of parent corporation and subsidiary corporation is not in itself a sufficient basis for subjecting both to the jurisdiction of the forum state, where one is a nonresident and is not otherwise present or doing business in the forum state." *Id.* at 596 (citation omitted). Indeed, even the fact that a subsidiary is "wholly owned" "is insufficient for personal jurisdiction" over the parent, as the Court "will not subject passive investors to [its] jurisdiction solely on the basis of their investment." *Id.*

An exception to this general rule exists, however, "where circumstances justify disregard of the corporate entity, and in such cases, the contacts of the subsidiary may be imputed to the parent for purposes of establishing general jurisdiction over the parent." *Weisler v. Community Health Sys., Inc.*, No. 12-cv-79, 2012 WL 4498919, at *11 (D.N.M. Sept. 27, 2012). "The relevant factual inquiry . . . is whether the parent actually controlled its subsidiary – i.e., exercised domination of the day-to-day business decisions of the subsidiary and a disregard of the corporate entity of the subsidiary – thereby giving rise to personal jurisdiction over the parent." *Id.* at *12 (citation omitted); *see also Alto*, 124 P.3d at 596-97 (holding that where the plaintiffs made a prima facie showing that the parent "did not simply own [the subsidiary]" but in fact "completely controlled it to the point where [the subsidiary] existed as little more than an instrument to serve" the parent's interests, the parent had "minimum contacts with New Mexico [] sufficient to satisfy due process concerns"). In evaluating the extent of a parent's control over a subsidiary for jurisdictional purposes, court have considered the following factors: "whether the directors or executives of the subsidiary do not act independently in the interest of the subsidiary but take direction from the parent corporation," *Alto*, 124 P.3d at 596 (citation omitted); whether the parent and the subsidiary "hav[e] directors or officers in common," *id.* (citation omitted); "whether the parent corporation pays the salaries or expenses or losses of the

8

subsidiary," *id.* at 597 (citation omitted); "whether the parent corporation finances the subsidiary," *id.* (citation omitted); and "whether the two corporations have separate auditors, books and records, offices, officers and staffs, bank accounts, tax returns, payrolls, and purchasing." *Weisler*, 2012 WL 4498919, at *12. Ultimately, the "inquiry will turn on the facts of each case," and "must be focused on minimum contacts." *Alto*, 124 P.3d at 594, 592.

Plaintiff maintains that the alter ego/agency theory applies here, pointing to the decision reached by the District Court for the Eastern District of Kentucky in *Johnson*. In *Johnson*, the plaintiff brought an action arising out of alleged negligence and fraud related to her care at BLC Lexington, a skilled nursing facility. *Johnson*, 2019 WL 6053012, at *1. She sued "a host" of Brookdale entities. *Id.* Twenty of the named defendants, all of which were subsidiaries of the parent holding company Brookdale Senior Living (and none of which are named as Defendants here), moved to dismiss for lack of personal jurisdiction. *Id.* The court explained that, if these subsidiaries were "alter-egos" of Brookdale Senior Living, "then exercising personal jurisdiction over them [would be] proper." *Id.* To make this determination, the court looked to factors identified by the Kentucky Supreme Court as indicating "whether there is a lack of corporate separateness." *Id.*

The court concluded that the subsidiaries were, in fact, alter egos of their parent Brookdale Senior Living, based on its factual findings that "the entities share the same management, have been known to share assets, operate from the same principal place of business, their finances are consolidated in one back account, file joint financial statements, and are all within the same industry." *Id.* at *7. Additionally, the Court found that "intercompany loans are available whenever a subsidiary cannot pay its bills," that the parent and its subsidiaries "have common officers," that Brookdale Senior Living "controls the finances for its subsidiaries

9

by controlling the general bank account, making all payments (including payroll) through the general bank account, negotiating contracts and providing supplies to its subsidiaries," that "many of the subsidiaries do not recognize corporate formalities," and that "Brookdale Senior Living, Inc. generates funds only through its subsidiaries." *Id.* Next, the court concluded that "continued recognition of separate entities would promote injustice," based on its finding that Brookdale Senior Living "is a holding company with no operations and relies on its operating subsidiaries to provide it with funds necessary to meet its financial obligations." *Id.* at **6, 7.

Arguing that *Johnson* "disproved" Defendants' jurisdictional challenge, Plaintiff urges this Court to accept "the well-reasoned findings" of *Johnson* and, based on those findings, conclude that the entities named as Defendants here, because they "all operate under the same Brookdale corporate structure" as that addressed in *Johnson*, are alter egos of each other and thus subject to this Court's jurisdiction. Doc. 34 at 4, 7, 8. The Court is not convinced. "Factual findings in one case ordinarily are not admissible for their truth in another case." *Wyatt v. Terhune*, 315 F.3d 1108, 1114 n.5 (9th Cir. 2003); *see also M/V Am. Queen v. San Diego Marine Contr. Corp.*, 708 F.2d 1483, 1491 (9th Cir. 1983) (stating general rule that "a court may not take judicial notice of proceedings or records in another cause so as to supply, without formal introduction of evidence, facts essential to support a contention in a cause then before it"). Thus, while the Court may take judicial notice of *Johnson*, "it may do so not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity." *Peoples v. Long*, No. 20-cv-2116, 2021 WL 7159900, at *12 (D. Colo. Dec. 13, 2021) (citation omitted). It follows that, while recognizing that *Johnson* found certain facts as to the Brookdale corporate structure, the Court may not rely on the truth of those findings to decide the jurisdictional issue at dispute herein.

Further, the legal conclusions in *Johnson* – reached by a district court in a different circuit applying the law of a different state to entities different from those named here – are not controlling. *See Farmers Ins. Co. of Arizona v. Potter*, No. 14-cv-722, 2015 WL 11111299, at *5 (D.N.M. Oct. 16, 2015) (holding that "a federal district court decision from another circuit that applied Montana state law on insurance policies" had "no persuasive or binding authority" on a court in this district). Rather, this Court must conduct its own legal analysis of the facts before it, applying the law of New Mexico. And in doing so, the Court finds *Johnson* distinguishable for several reasons.

Critically, the *Johnson* court applied Kentucky law in deciding whether it had personal jurisdiction over the named Brookdale entities. Under Kentucky law, the court applied an 11-factor test to determine whether there was a lack of corporate separateness amongst the named Brookdale entities and a second test to determine whether recognizing corporate separateness would lead to fraud or promote injustice. *Johnson*, 2019 WL 6053012, at *5, *7. Based on those tests, the court determined that the exercise of personal jurisdiction over the entities was appropriate. *Id.* at *8. In contrast, this Court is bound to apply New Mexico law. Under New Mexico law, liability through an alter ego theory and personal jurisdiction "are different inquiries that focus on different principles and frequently on differing bodies of law." *Alto Eldorado Partnership.*, 124 P.3d at 592. Accordingly, while "the relationship between a parent and its subsidiary may be crucial in evaluating jurisdiction itself," the ultimate question "must be focused on minimum contacts" and "the satisfaction of due process." *Id.* It would be improper to adopt *Johnson's* jurisdictional conclusions here, where the analytical process for reaching such conclusions is not the same.

Further, central to the *Johnson* court's decision was the fact that the parent company, Brookdale Senior Living, which was named as a defendant and did not contest jurisdiction, was merely a holding company with no operations or funding of its own; as a result, if the court did not exercise jurisdiction over its subsidiaries, and the parent company were found liable, it would have no funds to pay those liabilities. *Johnson*, 2019 WL 6053012, at *7. It was this "injustice" that the court sought to avoid in applying the alter ego theory to find jurisdiction over the subsidiaries. *Id.* The situation here is the reverse: the Facilities, which are the only subsidiary entities directly involved in the alleged misconduct, do not contest jurisdiction. The uncontroverted evidence demonstrates that each of these entities conducts business and generates its own cash flow. Doc. 33-1 ¶¶ 5, 6. Accordingly, the refusal to exercise jurisdiction over their parent entities (Brookdale Provident Properties, BKD FM21 Holdings, Brookdale Living Communities, and Brookdale Senior Living) would not result in the same injustice that the *Johnson* court sought to prevent.

Finally, the court in *Johnson* applied the alter ego theory to exercise jurisdiction over third-party subsidiaries with no involvement in the alleged misconduct. But Plaintiff has not cited, and this Court has not found, any case applying New Mexico law "holding or even suggesting in dicta that the agency or alter ego theories may be extended to impute a subsidiary's contacts with a forum state to a third-party subsidiary of a shared parent, where neither the out-of-state parent nor the out-of-state third-party subsidiary has any presence in the forum." *Weisler*, 2012 WL 4498919, at *14. Plaintiff contends that this is of no import, as the entities named as Defendants "are directly up the corporate chain of command for the Facilities." Doc. 34 at 8. There is no evidence to support this contention, however, and indeed, the uncontroverted evidence demonstrates that Brookdale Senior Living Communities, FEBC-ALT

12

Holdings, and FEBC-ALT Investors are neither direct nor indirect parents of either of the Facilities. Doc. 33-1 ¶¶ 12, 13. Its protestations notwithstanding, Plaintiff thus seeks to impute jurisdiction not only to the parents of the Facilities, but also to third-party entities twice removed from – and with no ownership interest in – the Facilities. *Weisler*, 2012 WL 4498919, at *14. Plaintiff makes no argument supported by any controlling authority to merit such an extension. *Id.* For these reasons, the Court does not find *Johnson* persuasive as to the jurisdictional issues raised herein.

In addition to the *Johnson* decision, Plaintiff points to the Leskowicz Deposition as providing factual support for her jurisdictional allegations. The Court agrees with Plaintiff that it may properly consider Leskowicz's deposition testimony, even though it was "taken for purposes of another case." *Wunder v. Elettric 80, Inc.*, No. 13-cv-4014, 2014 WL 4059763, at *3 (D. Kan. Aug. 15, 2014) (holding that a deposition taken in a separate proceeding was "at least as good as an affidavit" and admissible so long as it met the requirements of an affidavit); *see also Tingey v. Radionics*, 193 F. App'x 747, 765-66 (10th Cir. 2006) (finding that it was error for district court to strike deposition submitted in support of opposition to summary judgment motion); *Coldwell v. RITECorp Environ. Prop. Solutions*, No. 16-cv-1998, 2018 WL 5043904, at *8 (D. Colo. Oct. 17, 2018) (holding that it was permissible to use deposition testimony taken in a prior federal court action in making summary judgment determination). The Court does not, however, equally agree that the testimony contained therein provides the necessary factual support for Plaintiff's jurisdictional allegations.

According to Plaintiff, the Leskowicz Deposition establishes that Brookdale Senior Living Communities "centrally administers important operations and functions of all of the Brookdale subsidiaries." Doc. 34 at 6. In particular, Plaintiff points to the following testimony:

Brookdale Senior Living Communities "houses the majority of the shared service of joint general administrative activity"; "employee benefits administration" and "unemployment insurance administration" are "done centrally under Brookdale Senior Living Communities, Inc., staffed by Brookdale Employee Services-Corporate"; "the Brookdale organization has a policy committee" and its policies and procedures "are drafted at the corporate level,"; and "training new hires" is "done centrally."  Doc. 34-1 at 13, 19.  As an initial matter, nowhere in her deposition does Ms. Leskowicz mention either of the Facilities or testify to any facts that would indicate the relevance of her testimony to the corporate separateness of any Brookdale subsidiaries other than those at issue in the *Johnson* litigation.  Even assuming that her testimony applies to the Facilities, evidence that "general administrative activity" is shared among, and that the certain human resources policies and procedures are centralized across, the Brookdale enterprise falls short of showing "domination" by any of the Disputed Entities over "the day-to day-business decisions of the [Facilities] and a disregard of the corporate entity of the [Facilities]."  Indeed, "[c]ourts repeatedly have held that a parent may articulate general policies and procedures for its subsidiary without subjecting itself to jurisdiction in the forum where its subsidiary is present." *Weisler*, 2012 WL 4498919, at *13 (collecting cases).

   The Leskowicz Deposition does not address, much less establish, any of the factors that this Court must consider in evaluating the extent of the Disputed Entities' control over the Facilities for jurisdictional purposes.  Specifically, there is no testimony that the directors or executives of the Brookdale subsidiaries do not act independently in the interest of the subsidiary but rather take direction from their parent corporations, that the Brookdale parents and subsidiaries have directors or officers in common, that any of the Brookdale parents pays the salaries or expenses or losses of their subsidiaries, that the parent corporations finance the

subsidiaries, or that the parents and the subsidiaries share books and records, offices, officers and staffs, bank accounts, tax returns, payrolls, or purchasing. Accordingly, Plaintiff has not supported its alter ego/agency allegations with facts showing that any of the Disputed Entities "completely controlled" them "to the point where [the Facilities] existed as little more than an instrument to serve" the Disputed Entities' interests." *Alto*, 124 P.3d at 596-97.

In contrast, Defendants *have* provided evidence, namely, the Leskowicz Declaration, to refute Plaintiff's alter ego/agency allegations. Specifically, the Leskowicz Deposition shows that, as to the Facilities themselves, each has "an executive director responsible for the day-to-day operations," "[g]enerates its own cash flow, which is used to pay its own bills, and maintains its own separate books," "[c]onducts business directly with third parties," is not a "department" or "division of any other entity" but rather is a "standalone legal entity," and "strictly observe[s]" "formal legal requirements." Doc. 33-1 ¶¶ 5-6, 16-17. As to each of the Disputed Entities, none is "involved in any of the operations of" the Facilities, does "not pay the salaries, expenses or losses" of the Facilities, and does "not provide financial support to" the Facilities. *Id.* ¶ 15. As noted above, three of the Disputed Entities, namely, Brookdale Senior Living Communities, FEBC-ALT Holdings, and FEBC-ALT Investors, are neither direct nor indirect parents of either of the Facilities; none of these entities owns, operates, or oversees the Facilities, is "involved in the operations of" the Facilities, or has anything "to do with either of the Facilities." *Id.* ¶¶ 11-13. And the remaining Disputed Entities, namely, Brookdale Provident Properties, BKD FM21 Holdings I, Brookdale Living Communities, and Brookdale Senior Living, which admittedly are up the corporate chain from the Facilities, are "holding compan[ies]" with "no employees and no operations," that do "not create or enforce any policies or procedures of" the Facilities. *Id.* ¶¶ 8-10, 14.

Defendants thus have come forward with evidence, through the Leskowicz Declaration, that none of the Disputed Entities "had dominion and control over" the Facilities. *Berry v. Bryant*, No. 15-cv-514, 2012 WL 12819204, at *4 (D.N.M. Mar. 15, 2012). Plaintiff's allegations, considered in combination with its evidence, fail to controvert this sworn statement. *Id.* Because Plaintiff's jurisdictional allegations have been "challenged by an appropriate pleading," Plaintiff has the duty to support those allegations "by competent proof of the supporting facts." *Wenz*, 55 F.3d at 1508. Plaintiff has failed to discharge this duty. Accordingly, the Court determines that Plaintiff's allegations, as supported by the evidence, fail to make a prima facie showing of personal jurisdiction. *Id.* at 1505. Defendants' Motion to Dismiss, as it applies to the Disputed Entities, will be granted on this basis.

*Plaintiff's Request for Discovery*

In its Response, Plaintiff contends that, "[a]t the very least," it "is entitled to jurisdictional discovery" on its alter ego/agency theory. Doc. 34 at 10. Generally, "[w]hen a defendant moves to dismiss for lack of jurisdiction, either party should be allowed discovery on the factual issues raised by that motion." *Health Grades, Inc. v. Decatur Mem. Hosp.*, No. 05-cv-1445, 2006 WL 1704454, *3 (10th Cir. June 22, 2006) (quoting *Sizova v. Nat'l Institute of Standards & Technology*, 282 F.3d 1320, 1326 (10th Cir. 2002)). Nonetheless, "the district court has broad discretion in determining whether to permit jurisdictional discovery." *Health Grades*, 2006 WL 1704454, at *3. Accordingly, "a refusal to grant discovery constitutes an abuse of discretion [only] if the denial results in prejudice to a litigant." *Sizova*, 282 F.3d at 1326. In turn, "[p]rejudice is present where pertinent facts bearing on the question of jurisdiction are controverted . . . or where a more satisfactory showing of the facts is necessary." *Id.* (citation omitted). Notably, it is not an abuse of discretion to deny "jurisdictional discovery where there

16

is a very low probability that the lack of discovery [will affect] the outcome of this case." *Grynberg v. Ivanhoe Energy, Inc.*, 490 F. App'x 86, 103 (10th Cir. 2012) (citation omitted). "The burden of demonstrating a legal entitlement to jurisdictional discovery – and the related prejudice flowing from the discovery's denial – is on the party seeking discovery." *Id.* (citation omitted).

As an initial matter, the Court notes that it is not required to recognize "a general request for discovery" made in a response to a Rule 12(b)(2) motion. *WorldWide Ass'n of Specialty Programs & Sch. v. Houlahan*, No. 04-cv-4181, 2005 WL 1097321, *2 (10th Cir. May 10, 2005). A party is required to file an "explicit, supported motion for discovery." *Id.* Here, Plaintiff filed no such motion but instead made only a one-line request, almost as an afterthought, in its response to Defendants' Motion. This failure alone is sufficient for the Court to deny Plaintiff's request for jurisdictional discovery. *Id.*

Plaintiff's request for jurisdictional discovery also fails on the merits. As set forth above, Plaintiff's alter ego/agency assertions are unsupported by any colorable facts, and Plaintiff has failed to identify what specific discovery it would seek or explain how any discovery it might seek would provide factual support for its alter ego/agency theory. Plaintiff thus "has failed to present a sufficient factual predicate to support its argument that personal jurisdiction can be established through additional discovery." *G.A. Resort Condo. Assoc., Inc. v. ILG, LLC*, No. 19-cv-1870, 2020 WL 5536361, at *9 (D. Colo. July 2, 2020); *see also Quimby v. Community Health Sys. Pro. Servs. Corp.*, No. 14-cv-559, 2015 WL 13651239, at *6 (D.N.M. Oct. 1, 2015) (finding that where plaintiff "generally desire[d] to obtain discovery" on parent's control over operations of New Mexico subsidiaries, but did not controvert defendants' "evidence supporting a lack of personal jurisdiction," plaintiff did "not provide a modicum of objective support on

which to base his request for discovery," and accordingly, denying plaintiff's discovery request as an improper "fishing expedition"). It follows that Plaintiff has not met its burden to demonstrate a legal entitlement to jurisdictional discovery.

Nor has Plaintiff met its burden to demonstrate that the denial of its discovery request would result in prejudice. Because Plaintiff has not alleged any facts in support of its alter ego/agency theory, it has failed to demonstrate that "pertinent facts bearing on the question of jurisdiction are controverted." *Sizova*, 282 F.3d at 1326. Similarly, because Plaintiff has made no factual allegations that provide a reasonable basis to believe that relevant facts to support its alter ego/agency theory may exist, it has failed to demonstrate that "a more satisfactory showing of the facts is necessary." *Id.* For these reasons, the Court will deny Plaintiff's request for jurisdictional discovery. *See Weisler*, 2012 WL 4498919, at *15 (denying discovery request where plaintiff's alter ego and agency assertions were unsupported by any colorable facts and plaintiff failed to identify any specific controverted jurisdictional facts that warranted further discovery, as "any further discovery would be a fishing expedition"); *Berry*, 2012 WL 12819204, at *7 (denying discovery request where plaintiff "put forth no more than conclusory allegations of domination and control and a generalized view of the broad discovery that she [sought] to take").

## **CONCLUSION**

Brookdale Santa Fe and Brookdale Tramway Ridge are not distinct legal entities capable of being sued, and thus must be dismissed from this action. As to the Disputed Entities, Plaintiff's allegations, as supported by the evidence, fail to make a prima facie showing of personal jurisdiction; for this reason, the Disputed Entities must be dismissed from this action. Plaintiff has not filed a proper motion for discovery and has failed to establish that it is entitled to

discovery or that it would suffer prejudice from the denial of its request for discovery; accordingly, Plaintiff is not entitled to jurisdictional discovery.

**IT IS THEREFORE ORDERED** that the Motion to Dismiss Plaintiff's First Amended Complaint [Doc. 33] is **GRANTED,** as follows: each of the entities named as Defendants in this matter are dismissed other than BLC-Ponce De Leon, LLC, and Brookdale Place of Albuquerque, LLC.

DATED this 16th day of August 2022.

_____
MARTHA VAZQUEZ
Senior United States District Judge